## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

'JUL 0 3 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JOSE MIGUEL ROJAS-MIRON,<br>Petitioner, | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. B-07-00083 |
| UNITED STATES OF AMERICA,<br>Respondent. | §<br>§<br>§ | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court are the following: (a) Motion to Vacate or Set Aside Sentence pursuant to 28 U.S.C. § 2255 (hereinafter referred to as "Motion to Vacate") (Docket No. 1) filed by Petitioner, Jose Miguel Rojas-Miron ("Petitioner"); (b) Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 10); and (c) Motion to Dismiss and Motion for Summary Judgment filed by Respondent United States of America ("Respondent") (Docket No. 13). For the reasons stated below both of Petitioner's Motions are **DENIED** and that Respondent's Motion to Dismiss and Motion for Summary Judgment is **GRANTED** and that this case is hereby **DISMISSED**.

### I. Background

#### A.    The Arrest

On or about February 8, 2005, the Harlingen Police Department received call reporting that a Nissan Maxima was parked at a hotel, and that said vehicle was possibly being used to smuggle an unknown quantity of cocaine. *Resp.'s An. to §2255, Mot. to Dism., Mot. Summ. Judg.,* at 5 (*internal citations omitted*). The officers proceeded to the hotel, located the vehicle in question and

determined that the Nissan Maxima was registered to Petitioner. *Id.* Surveillance on the Nissan was established, and the officer's quickly determined that a second vehicle, a gray Mercury Topaz registered to co-defendant Roberto Fernando Rendon ("Rendon"), was involved in the smuggling. *Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 2. The officers continued their surveillance the next day, and, at approximately 5:30 a.m., observed Rendon, accompanied by the Petitioner, return to the hotel in the Nissan Maxima and park it beside the Mercury Topaz. *Id.* Shortly after the Nissan's arrival, the officer's observed Petitioner, Rendon, co-defendant Carlos Cavazos-Loa ("Cavazos") and co-defendant Daniel Castillo-Martinez ("Castillo") transferring objects from the Nissan Maxima's trunk to the Mercury Topaz's trunk. *Id.* At 6:00 a.m. Rendon drove, with Petitioner as passenger, the Mercury Topaz across the street and parked the vehicle. *Resp.'s An. to §2255, Mot. to Dism., Mot. Summ. Judg.,* at 6.

The Nissan Maxima driven by Castillo and occupied by Cavazos exited the hotel and proceeded to travel Northbound on U.S. Highway 77. *Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 3. Later that day the Mercury Topaz was observed traveling north on U.S. Highway 77. *Id.* A traffic stop was executed on the Mercury Topaz and both Rendon and Petitioner were interviewed. *Id.* Both individuals stated that they were traveling to Corpus Christi to purchase vehicles, and Rendon consented to a search of the Mercury Topaz. *Id.* Despite being searched with a drug detention canine, no drugs were found in the Mercury Topaz. *Id.,* at 3. During the traffic stop of the Mercury Topaz, the investigators observed the Nissan Maxima pulling into the parking lot of a nearby convenience store. *Id.* Officers approached the Nissan Maxima and began questioning Castillo and Cavazos. *Id.* Castillo stated that he had purchased the Nissan from Petitioner and then gave the officers consent to search the car. *Id.* A drug detection dog was used and the canine alerted

2

near the rear seat of the Nissan Maxima. *Id.* Despite this alert, the investigating officers were not able to locate any narcotics in the Nissan Maxima. *Id.*

Agents from the Bureau of Immigration and Customs Enforcement (ICE) were notified of the possible existence of narcotics in the two cars and both the Nissan and Mercury were transported to the Los Indios Port of Entry to be x-rayed. *Id.* While the Mercury Topaz displayed no abnormalities, upon examination the agents located a false compartment beneath the trunk of the Nissan Maxima containing 17.4 kilograms of cocaine. *Id.* Subsequent analysis of the drugs discovered in the Nissan's hidden compartment revealed the existence of 895.8 grams of 91% pure methamphetamine, known as "Ice", as well as 12.99 kilograms of cocaine. *Resp.'s An. to §2255, Mot. to Dism. Mot. Summ. Judg.,* at 7. All four occupants of the two inspected cars were told that the agents had discovered cocaine, and each was arrested. *Id.*

ICE agents then advised Petitioner of his Miranda Warning. *Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 6. After being informed of his Miranda rights, Petitioner agreed to make a statement. *Id.* Petitioner stated that on February 8, 2005, Rendon and Cavazos picked him up at his home in Brownsville, Texas, and took him to purchase automobile insurance for the Nissan Maxima in question. *Id.* The three men next drove to a local cellular phone company and Rendon purchased two cellular telephones. *Id.* Petitioner explained that Rendon then offered him $250.00 if he would agree to accompany Rendon to Corpus Christi. *Id.* On February 9, 2005, Rendon picked Petitioner up at 4:30 a.m. and the two men traveled to a hotel in Harlingen, Texas. *Id.* Upon arrival, Petitioner assisted in transferring several suitcases from the Nissan Maxima to the Mercury Topaz. *Id.* Petitioner admitted that he suspected that the suitcases contained marijuana, and further suspected that he and Rendon were going to be following the car containing the narcotics. *Id.* Petitioner next

3

explained to the Agents that the narcotics were to be driven to Corpus Christi, then to Houston, and finally to Dallas. *Id.*   Ultimately, Petitioner stated that he had agreed to participate in the transportation of narcotics because he needed the money. *Id.*

**B.    The Sentencing**

On November 22, 2005, Petitioner pleaded guilty pursuant to an oral plea agreement. *Resp.'s An. to §2255, Mot. to Dism., Mot. Summ. Judg.,* at 10.   After the deduction of three levels for acceptance of responsibility, Petitioner's total offense level was calculated  to be level 33. *Id.* (*internal citations omitted*).   According to the Pre Sentence Report "(PSR)" the voluntary guideline range for Petitioner was calculated to be between 135 to 168 months of imprisonment with a statutory ten-year term of imprisonment. *Id.*   While the United States filed no objections to the PSR, Petitioner filed an Objection to the PSR on October 15, 2005. *Id.*   In this document, Petitioner actually asserted two objections: the first was granted and that had the effect of lowering his offense level by two levels; and the second was denied. *Id.*

This Court denied the second of Petitioner's objections, which was to the role Petitioner played in the offense, finding that Petitioner had an ordinary role in the crime and was therefore not entitled to a reduction as a minimal or minor participant. *Id.*   The consequence of the Court's two rulings left Petitioner with a voluntary guideline range of 108 to 135 months.   At the sentencing hearing on November 22, 2005, the Court remanded Petitioner to the custody of the Bureau of Prisons to serve a 108-month term of imprisonment to be followed by a five-year term of supervised release. *Id.*   On January 5, 2006, a final judgment was entered against Petitioner on the record. *Id.* Petitioner did not file any appeal of this final judgment. *Id.*, at 5.

4

With regard to Petitioner's co-defendants, on April 28, 2005 Rendon, pursuant to a written plea agreement, pled guilty to possession with intent to distribute a quantity of cocaine exceeding 5 kilograms. *Id.*, at 11-12.   Rendon was sentenced to 195-month term of imprisonment to be followed by a five-year term of supervised release. *Id.* at 12.   On July 12, 2005, Cavazos, pursuant to a written plea agreement, pled guilty to possession with intent to distribute a quantity exceeding 5 kilograms of cocaine. *Id.*  The Court sentenced Cavazos to 125-month term of imprisonment to be followed by a five-year term of supervised release. *Id.*  While both Petitioner and Castillo selected a jury, Petitioner, chose to plead guilty before opening statements. *Id.*  Castillo pursued his jury trial to verdict and was convicted on all three counts of the superseding indictment. *Id.*  On February 7, 2006, this Court sentenced Castillo to a 210-month term of imprisonment to be followed by a five-year term of supervised release. *Id.*

## II. Petitioner's § 2255 Motion is Time Barred

Petitioner filed his initial Motion to Vacate or Set Aside Sentence on June 7, 2007, therefore his petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[1]   The AEDPA provides a one-year limitation period for filing federal habeas corpus petitions.  The provisions of 28 U.S.C. § 2255 set forth four different scenarios that start the running of the one-year limitations period:

The limitation period shall run from the latest of–

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[1] Pub.L. 104-132, 110 Stat. 1214 (1996).

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

As to the language used in subsection (1), for purposes of defining a "final" conviction, the Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. *Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 1078-79 (2003);*United States v. Gamble*, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam). The time period within which to file a notice of appeal expires ten days after the entry of the judgment of conviction. FED.R. APP. P. 4(b)(1)(A).

In this case, Petitioner does not argue any special facts which would entitle him to fall under subsections (2), (3) or (4). However, under subsection (1), it appears that Petitioner's claim is untimely. The record reveals that Petitioner did not appeal his conviction. Petitioner's §2255 claim had to have been brought one year after the expiration of the ten day period permitted for filing a notice of appeal pursuant to FED. R. APP. P. 4(b)(1)(A). It is undisputed that the judgment was entered on January 5, 2006. As calculated under Rule 26(a) of the Federal Rules of Appellate Procedure,[2] ten days following the judgment would have been January 22, 2006. Therefore, the cut-off date applicable to Petitioner in this case would have been at the very latest one year later on

---

[2]"(a) Computing Time. The following rules apply in computing any period of time specified in these rules or in any local rule, court order, or applicable statute: (1) Exclude the day of the act, event, or default that begins the period. (2) Excludes intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, ...(3)Include the last day of the period unless it is a Saturday, Sunday, legal holiday..."

January 22, 2007. It is undisputed, however, that Petitioner's first motion to vacate was not placed in the prison mail system until June 4, 2007.

In its Answer to Section 2255 Motion, Motion to Dismiss and Motion for Summary Judgment, the Government contends that Petitioner's "motion is untimely and should be dismissed." *Resp.'s An. to §2255,Mot. to Dism., Mot. Summ. Judg.,* at 14-15. Petitioner filed no response to Respondent's Motion to Dismiss and Motion for Summary Judgement. Further, nowhere in any of Petitioner's submissions does he respond to the Government's contention that his motion is untimely. Rather, Petitioner makes only one reference in his pleadings regarding the untimely filing of his motion. *See Pet. 2ⁿᵈ Mot. to Vacate,* at 13. Specifically, Petitioner asserts ". . . that his ignorantia juris prevented him from filing the motion in a timely fashion." *Id.* As discussed more fully below, however, neither a movant's lack of knowledge of the legal process nor his lack of legal representation warrants relief from the imposition of the one-year time barr. *See Fierro v. Cockrell*, 294 F.3d 674, 683 (5ᵗʰ Cir. 2002); *see also Turner v. Johnson*, 177 F.3d 390, 392 (5ᵗʰ Cir. 1999) Absent any evidence or authority indicating that Petitioner's motion was timely filed and given that the undisputed evidence establishes that Petitioner failed to file his Motion to Vacate within the one-year time period, the Court holds that Petitioner's Motion to Vacate is barred by the AEDPA's one-year limitations period.

### III. Equitable Tolling

AEDPA's filing provision is not jurisdictional, but is a statute of limitations which can be equitably tolled. *See Fisher v. Johnson*, 174 F.3d 710, 711 (5ᵗʰ Cir. 1999). A district court can allow an untimely petition to proceed under the doctrine of equitable tolling in extraordinary circumstances. *Id.* As noted previously, however, there is nothing extraordinary about Petitioner's

7

failure to file his Motion to Vacate in a timely fashion. *See Pet. 2ⁿᵈ Mot. to Vacate*, at 13. Rather, Petitioner's sole excuse for failing to satisfy the one-year deadline was his lack of legal knowledge. *Id.* The Fifth Circuit has made it clear, however, that a lack of knowledge of the law, however understandable it may be, does not ordinarily justify equitable tolling. *Fierro v. Cockrell*, 249 F.3d, at 683. Neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177 F.3d., at 392. Equitable tolling is not available if the petitioner does not act diligently in attempting to meet the one year limitations deadline. *Coleman v. Johnson*, 184 F.3d 398, 402 (5ᵗʰ Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). Not only has Petitioner failed to present any rare and exceptional circumstances which would equitably toll the limitations period in this case, Petitioner has similarly failed to proffer any evidence that he acted diligently in attempting to satisfy the one-year limitations deadline.

### IV. Minor Participant

While the one-year limitation is, in itself, a sufficient basis upon which to dismiss this case, the Court has chosen to address each of Petitioner's contentions below. Petitioner requests that the Court reconsider its previous ruling and reduce his sentence based on his contention that he was a minor participant in the aforementioned criminal activity. *Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 11 - 14. Specifically, Petitioner maintains that because of his minor participation, "he is entitled to two (2) level reduction pursuant to §3B1.2 of the United States Sentencing Guidelines." *Id.*, at 11. Pursuant to "U.S.S.G.§ 3B1.2, a district court may reduce a defendant's offense level by two levels if the defendant was a 'minor participant' in the criminal activity . . .." *U.S. v. Virgen-Moreno*, 265 F.3d 276, 296 (5ᵗʰ Cir. 2005)(*internal citations omitted*). In order to establish minor participation, a defendant must prove by a preponderance of the evidence that he is entitled to a

8

reduction in his sentence due to his or her reduced level of culpability. *See U.S. v. Martin*, 78 F.3d 808, 814 (2nd Cir. 1996). More specifically, this type of adjustment is generally called for only if a defendant proves that he or she is "substantially less culpable than the average participant." *See Virgen-Moreno*, 265 F.3d at 296. A district court's determination on this factor is reviewed based upon a clear error standard. *Id.*

As an initial matter, this is not the first time the Court has addressed and ruled on this issue. As explained previously, on October 15, 2005, Petitioner filed an Objection to the PSR in which he asserted, among other things, that he was a minor participant. *Resp.'s An. to §2255, Mot. to Dism., Mot. Summ. Judg.*, at 10. Thus, prior to imposing its sentence, the Court heard arguments on the minor participant contention from both Petitioner's counsel as well as from the prosecuting attorney. *See Sent. Tran.*, Dkt. # 225, B-05-cr-178-01, at 3 - 5. Ultimately, the Court found that Petitioner was not a minor participant and therefore not entitled to a downward adjustment of the applicable guideline range. *Id.*

Rather than providing the Court with any new factual bases or unique explanations to support his claim for minor participant status, Petitioner's present motion simply reiterates the same arguments that his counsel presented to the Court on the day of sentencing. *Id.* For example, at the pre-sentencing hearing, Petitioner's counsel argued that Petitioner was a minor participant because: (a) he had no criminal history, was paid $250 for driving with a co-defendant in the lead vehicle which contained no drugs; (b) he was not involved in the negotiating, the purchasing, or the loading of the drugs; and (c) he was simply a passenger with Rendon. *Id.* By comparison, in the present motion Petitioner asserts that the Court should find him to have been a minor participant because: (a) he was simply a passenger riding with Rendon and was not involved in any negotiations; (b) he

9

was not involved in purchasing the drugs; (c) he was not involved in loading or unloading the drugs; (d) he was not involved in providing security.  Given that Petitioner has failed to provide any new evidence or arguments to support his claim that he was a  minor participant in the underlying criminal activity, the Court find that Petitioner has failed to meet his burden of proving by a preponderance of the evidence that he is entitled to a reduction in his sentence due to a reduced level of culpability. *See U.S. v. Martin*, 78 F.3d, at 814.

### V. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690 (2003).  A claim of ineffective assistance of counsel is properly made for the first time in a motion to vacate because it raises an issue of constitutional magnitude and as a general rule cannot be resolved on direct appeal. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).  Establishment of ineffective assistance of counsel satisfies the cause and prejudice requirement. *United States v. Patten*, 40 F.3d 774, 776 (5th Cir.1994).

Ineffective assistance of counsel claims are generally reviewed under the well established *Strickland* standard, as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). To establish that his counsel was constitutionally ineffective, Petitioner must show both that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense. *Id.* An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable. *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir.1994). With respect to prejudice in the context of noncapital sentencing, the habeas court must determine whether there is

a probability that, but for counsel's deficiency, the defendant's sentence would have been significantly less harsh. *Spriggs v. Collins*, 993 F.2d 85, 87 (5th Cir.1993).

### 1. Failure to Object Based on Miranda

Petitioner initially argues that his counsel was ineffective for not attacking the Government's assertion that he had received adequate *Miranda* warnings. *See Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 15 - 17. Specifically, Petitioner requests that the Court determine " . . . whether Mr. Cyganiewicz was ineffective by not protecting the Petitioner's Fifth Amendment right, or whether the statements made by the Petitioner was [sic] voluntary or did it amount to unlawful custodial interrogation." *Id,* at 16 - 17. Petitioner's argument that his counsel failed to contest the voluntariness of his custodial statements is belied by the record in this case.

First, it is undisputed that on March 30, 2005, Petitioner's counsel filed a Motion to Suppress Evidence. *See Pet. Mot. Supp. Ev.* Dkt. #38, B-05-cr-178-01). In that motion, Petitioner's counsel sought to suppress any statements made by Petitioner to law enforcement officers because: (i) the statements were obtained in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (ii) the statements were obtained as the result of an unlawful arrest; (iii) the statements were made without a voluntary and knowing waiver or his right to remain silent. *See Id.,* at 1 - 2. It is further undisputed that on August 9, 2005, this Court held a hearing on Petitioner's Motion to Suppress. *See Supp. Tran.* Dkt. #101, B-05-cr-178-01. At the hearing, Petitioner's counsel cross-examined witnesses and argued that the Court should suppress Petitioner's statements because they were either made prior to Petitioner having received his *Miranda* warnings or because Petitioner did not make a knowing and voluntary waiver of his *Miranda* rights. *Id.* Before the Court could issue a ruling on his Motion to Suppress Evidence,

11

however, Petitioner chose to enter a guilty plea. *See Resp.'s An. to §2255, Mot. to Dism., Mot. Summ. Judg.*, at 10. Thus, contrary to the present motion, the record indicates that Petitioner's counsel was diligent in addressing and protecting Petitioner's *Miranda* and Fifth Amendment rights. Accordingly, Petitioner has failed to establish that his counsel's conduct with regard to the *Miranda* protections falls below an objective standard of reasonableness or resulted in actual prejudice.

### 2. Failure to Secure a Five Year Sentence

Petitioner next makes a hodge podge of claims the thrust of which is an argument that his counsel was ineffective in failing to secure for him a five-year prison sentence. *See Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 17. Specifically, Petitioner claims that his counsel never provided him with copies of the discovery or any chemical analysis reports of the substances found in the vehicle, and told him that he would receive a five-year sentence if he plead guilty to Counts one and three of the indictment. *Id.* First, Petitioner fails to offer any explanation as to how his counsel's decision not to show him discovery and chemical analysis reports resulted in his receiving a sentence in excess of 60 months. Second, Petitioner's claim that his counsel somehow guaranteed him a five-year sentence if he plead guilty is contradicted by the PSR which Petitioner acknowledged on the record at his sentencing that he and his counsel had reviewed together. *See Sent. Tran.,* Dkt. # 225, B-05-cr-178-01, at 2. That PSR had the potential sentencing range of 135 to 168 months—clearly twice as much as Petitioner claims he was promised. Additionally, this Court, when he pled guilty, advised him of the existence of the ten (10) year mandatory minimum sentence that applied. Beyond this, Petitioner wholly fails to offer any substantiation to his allegation that he was guaranteed no more that a five-year sentence. The Court cannot assume or create the basis of Petitioner's claim. The complete absence of any factual support for Petitioner's claim renders it totally baseless

12

(especially since Petitioner's plea proceeding substantiates just the opposite). Thus, with regard to his claim that his counsel failed to secure him a five-year sentence, Petitioner has failed to establish that his counsel's conduct falls below an objective standard of reasonableness or resulted in actual prejudice.

### 3. Failure to Seek Downward Departure Based on Status as a Deportable Alien

Petitioner next argues that his counsel was ineffective for failing to "move the court for a downward departure based on the Petitioner's status as a deportable alien, . . .." *Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 17 - 19. For a court to depart downward on the basis that the defendant is a deportable alien is proper only in the most extraordinary of cases, and are considered "highly infrequent." *See United States v. Garay*, 235 F.3d 230, 232 - 233, n. 8 (5th Cir. 2000). When determining the propriety of a downward departure a district court evaluates whether there is anything atypical about a case that would take it outside the "heartland" of cases to which the guidelines apply. *Id.*, at 232. Further, a deportable alien who commits a crime is still within the "heartland" of the guidelines, absent something more. *Id.*, at 233-34; *see also United States v. Maldonado*, 242 F.3d 1, 4 - 5 (1st Cir. 2001).

In the present case, Petitioner offers no evidence, argument or explanation as to why his status as a deportable alien makes his case in any way unique or atypical. Moreover, Petitioner fails to proffer any reason why his case falls outside the "heartland" of the guidelines. *See Id.* Absent any such justification, Petitioner has failed to establish that prejudice resulted from his counsel's failure to move the Court for a downward departure or to show that his counsel's failure to request a downward departure was unreasonable.

13

#### 4. Failure to Object to Factual Discrepancies in the PSR

Petitioner next sets forth a litany of factual discrepancies that he maintains his counsel failed to object to at sentencing. *Pet. Memo. In Supp. of §2255 Mot. to Vacate,* at 19 - 21.  Specifically, Petitioner claims that he brought to his counsel's attention factual discrepancies in ¶ 15, ¶ 20 and ¶ 21 of the PSR. *Id.*  Other than identifying them, however, Petitioner fails to explain why the alleged inconsistencies in the PSR are relevant to the issue at hand.  Further, he offers no argument as to how these alleged inconsistencies would have affected his sentence had they been pointed out to the Court.  As explained previously, the Court cannot assume or create the basis of Petitioner's claim.  Given that he has offered no explanation as to why or how these alleged factual discrepancies in the PSR would have altered his sentence, Petitioner's allegation that his counsel failed to point them out to the Court lacks merit.  Thus, with regard to his claim that his counsel failed to bring alleged factual discrepancies in the PSR to the Court's attention, Petitioner has failed to establish that his counsel's conduct falls below an objective standard of reasonableness or resulted in actual prejudice.

### VI. Evidentiary Hearing

In the instant case, the record is clearly adequate to dispose fairly of Petitioner's allegations. Nothing in § 2255 requires direct evidence before a court can forego a hearing. *United States v. Drummond,* 910 F.2d 284, 285 (5th Cir. 1990).  Section 2255 permits the district court to dispense with a hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.  *Id.* As such, an evidentiary hearing is unnecessary. *United States v. Smith,* 915 F.2d 959, 964 (5th Cir. 1990).  If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.  Rule 8(a), 28 U.S.C. foll. § 2255.

14

## VII. Conclusion

After thoroughly reviewing of all of the files, records, and correspondence relating to the judgment being challenged, and for the reasons set forth above, the Court hereby finds that Petitioner is not entitled to the relief sought.  Accordingly, the Court hereby **DENIES** Petitioner's Motion to Vacate or Set Aside Sentence pursuant to 28 U.S.C. § 2255 (Docket No.1) and Petitioner's Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 10), and hereby **GRANTS** Respondent's Motion to Dismiss and Motion for Summary Judgment (Docket No. 13)

So Ordered this 3rd day of July, 2008.

_____
Andrew S. Hanen
United States District Judge